UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

--------------------------------X

MARYANN GENSLER, AS CO-EXECUTOR
OF THE ESTATE OF MARY CATHERINE
STRICKLAND

       Plaintiff,

   -against-

SANOLFI-AVENTIS; SANOLFI AVENTIS
U.S., LLC.; AVENTIS
PHARMACEUTICALS, INC.; AVENTIS,
S.A.; AVENTIS, INC.;
SANOLFI=SYNTHELABO; KINRAY, INC.
SOUTHOLD PHARMACY, INC.; HOECHST
MARION ROUSSEL, INC.; RHONE
POULANC, S.A.; PHARMACEUTICAL
PRODUCT DEVELOPMENT, INC.; THE
COPERNICUS GROUP, INC.; CONVANCE,
INC., A/K/A/ CONVANCE CENTRAL
LABORATORY, INC.; MARIA ANN
KIRKMAN-CAMPBELL, M.D.; EGISTO
SALERNO, M.D.; JEFFERY L. MCLEOD,
M.D.; WILLIAM TORSTAR, M.D.; CARL
K. LANG, M.D., A/K/A CARL K.
LANGE, M.D.; AND JOHN DOES 1-350
INCLUSIVE,

       Defendants.

--------------------------------X

<u>MEMORANDUM AND ORDER</u>

Civil Action No.
CV-08-2255(DGT)(RER)

Trager, J:

    This action was originally filed by plaintiff in the Supreme

Court of New York for Queens County on March 14, 2008.  It arises

out of the death of plaintiff's mother, Mary Katherine Strickland

("the decedent"), which plaintiff alleges was caused by the

pharmaceutical drug Ketek.  According to plaintiff, Ketek is

manufactured by the Sanolfi defendants[1] and decedent's death was
caused by drugs directly purchased from Southold Pharmacy
("Southold") and distributed by Kinray, Inc. ("Kinray").

The Sanolfi defendants filed a notice of removal to transfer
the action to federal court on June 4, 2008.  The notice of
removal alleges that federal jurisdiction is proper on grounds of
diversity of citizenship under 28 U.S.C. § 1332(a).  Federal
diversity jurisdiction requires complete diversity such that all
plaintiffs must be residents of different states than all
defendants.  Wisconsin Dep't of Corrections v. Schacht, 524 U.S.
381, 388 (1998).  It is undisputed that the decedent as well as
defendants Kinray and Southold are citizens of New York.
Therefore, if Kinray and Southold are proper defendants,
diversity jurisdiction does not exist and the case must be
remanded back to state court.

The Sanolfi defendants contend in their notice of removal
that Kinray and Southold have been fraudulently joined and that
complete diversity exists among the real parties in interest.
Plaintiff now moves to remand the case back to state court,
arguing that (1) Kinray and Southold are real parties in interest
as it is not impossible for plaintiff to assert a cause of action

---

[1]Defendants sanolfi-aventis U.S. LLC, Aventis
Pharmaceuticals, Inc., sanolfi-aventis, Aventis S.A., Aventis
Inc., sanolfi-synthelabo, Hoecht Marion Roussel, Inc. and Rhone
Poulanc are collectively referred to as the "Sanolfi defendants."

against them and (2) defects in the Sanolfi defendant's removal procedure preclude removal to federal court.  Sanolfi responds that (1) there is no reasonable prospect that plaintiff can state a claim against Kinray and Southold and (2) their removal procedure was either free of defects or these defects are harmless.

For the reasons stated below, plaintiff's motion to remand to state court is granted.

## Background

Plaintiff alleges that the defendants played various roles in the design, manufacture, distribution and sale of the drug Ketek.  Complaint p. 1 ("Compl.").  According to plaintiff, the defendants' actions led to the death of her mother due to liver problems arising from her use of Ketek.  Compl. ¶ 3-4.  The defendants in this action include the Sanolfi defendants, Kinray, Southold and various individual doctors, among others. Compl. ¶ 8, 9, 25.  The Sanolfi defendants were allegedly involved in the design of Ketek, its successful application for approval by the FDA and its manufacture and marketing. Compl. ¶ 5.  Kinray was involved in the wholesale distribution of Ketek.  Compl. ¶ 8.  Southold was involved in the retail distribution.  Compl. ¶ 9.  The individual doctors were generally involved in the design of Ketek.  Compl. ¶ 5.

In her complaint, plaintiff raises multiple causes of action. She asserts that (1) all defendants are liable for negligence, Compl. p. 28, (2) all defendants are liable for defectively designing Ketek under strict liability principles, Compl. p. 32, ¶ 120, (3) all defendants are liable for failure to warn under products liability law, Compl. p. 35, (4) all defendants are liable under New York's prohibition against deceptive advertising, Compl. p. 38, (5) all the manufacturer defendants are liable for breach of express warranty, Compl. p. 42, (6) all manufacturer defendants are liable for breach of implied warranties, Compl. p. 44, (7) all defendants are liable for common law fraud, Compl. p. 45, (8) all defendants are liable for negligent misrepresentation, Compl. p. 50, (9) all defendants are liable for punitive damages, Compl. p. 51.

This action was initially filed in state court, but the Sanolfi defendants filed a notice of removal to federal court, invoking this court's jurisdiction under 28 U.S.C. § 1332(a). The notice of removal did not explicitly indicate that the Sanolfi defendants had obtained the consent of the other defendants. However, the Sanolfi defendants represent in their opposition papers that they obtained the consent of nearly all of the other defendants prior to the filing of their notice of removal and have filed supporting affidavits from representatives of those parties. Defendant's Memorandum in Opposition to the

Motion to Remand at 12 n.6, exh. 1-3 ("Def. Opp. Mot.").

The Sanolfi defendants, however, did not obtain the consent of several classes of parties. First, they did not obtain the consent of four doctors who had not been served with process prior to the filing of the removal petition. Id. Second, they did not obtain the consent of Kinray and Southold - whom they allege in their notice of removal and in their opposition papers to be nominal parties. Id. In their papers, the Sanolfi defendants extensively support their contention that Kinray and Southold are nominal parties. Third, they did not obtain the consent of Dr. Kirkman-Campbell - who apparently was served with process prior to the filing of the notice of removal. Id. They assert in their opposition papers that Dr. Kirkman-Campbell is a sham defendant, but they provide essentially no substantive support for this contention. Def. Opp. Mot. at 12 n.6.

## Discussion

### (1)

### Fraudulent Joinder

Diversity jurisdiction does not exist because Kinray has not been fraudulently joined. The principle of fraudulent joinder provides that "a plaintiff may not defeat a federal court's diversity jurisdiction and a defendant's right of removal by merely joining as defendants parties with no real connection with

the controversy." Pampillonia v. RJR Nabisco, Inc., 138 F.3d 459, 460-61 (2d Cir. 1998). Parties with no real interest in the case may be disregarded for purposes of evaluating diversity jurisdiction. Id.

To show fraudulent joinder,

the defendant must demonstrate, by clear and convincing evidence ... that there is no possibility, based on the pleadings, that a plaintiff can state a cause of action against the non-diverse defendant in state court. The defendant seeking removal bears a heavy burden of proving fraudulent joiner, and all factual and legal issues must be resolved in favor of the plaintiff.

Id. at 461.[2] "[T]he federal court resolves any uncertainties in applicable state law in plaintiffs' favor and subjects the complaint to less searching scrutiny than on a motion to dismiss for failure to state a claim." Intershoe, Inc. v. Filanto S.P.A., 97 F.Supp.2d 471, 474 (S.D.N.Y. 2000).

To sustain their motion to remand, plaintiffs need merely show that either Kinray or Southold has not been fraudulently joined. If one is a real party in interest, complete diversity is defeated. As discussed in detail below, Kinray has not been fraudulently joined because it is not impossible for plaintiff to assert claims of design defect, failure to warn and negligence against Kinray. Though New York law is unclear in some relevant

---

[2] A defendant can also establish fraudulent joinder by showing "outright fraud committed in the plaintiff's pleadings[,]" but that theory is not relevant to the instant case. Pampillonia, 138 F.3d at 461.

6

respects, these doubts must be resolved in plaintiff's favor.

## a.  "Inconsistent" Theories

The Sanolfi defendants argue that both Kinray and Southold,
have been fraudulently joined for three reasons.  First, they
assert that the claims raised against Kinray and Southold cannot
stand because they are factually inconsistent with plaintiff's
claims against other defendants.  Specifically, the Sanolfi
defendants note that plaintiff alleges, on the one hand, that
even the non-manufacturer defendants knew of the dangers posed by
Ketek and failed to provide adequate warnings, and, on the other
hand, that the manufacturers withheld information about the
dangers of the drug.  According to the Sanolfi defendants, these
two theories cannot simultaneously stand and joinder of Kinray
and Southold is therefore fraudulent.

This allegation of inconsistent theories does not suffice to
show fraudulent joinder.  For one, a plaintiff can maintain two
inconsistent theories at the pleading stage.  <u>Henry v. Daytop
Village, Inc.</u>, 42 F.3d 89, 95 (2d Cir. 1994) (discussing the
federal rules); <u>see</u> <u>Haythe & Curley v. Harkins</u>, 214 A.D.2d 361,
362, 625 N.Y.S.2d 154, 155 (1st Dep't 1972) (discussing
inconsistent contract-related theories of recovery under New York
law); <u>see also</u> N.Y.Jur. Pleading § 41 (2009).[3]  Moreover, the two

---

[3]Though the parties cite principally to federal procedural
rules, the better view is that state procedural rules apply in
evaluating a claim of fraudulent joinder.  <u>See</u> <u>Federal Ins. Co.</u>

claims are not logically inconsistent.  It is possible that the
manufacturers wrongfully concealed information regarding the
dangers of Ketek but that they were only partly successful such
that the information was hidden from doctors and consumers but
Kinray and Southold still discovered the danger.  Finally, even
if the claims against the manufacturer defendants and the claims
against Kinray and Southold were inconsistent and inconsistent
claims could not be maintained at the pleading stage, that would
establish only that both sets of allegations could not be
maintained at the same time.  It would not establish which set of
allegations was invalid and therefore would not necessarily
invalidate the claims against Kinray and Southold.

The Sanolfi defendants cite various cases that they claim
support the proposition that inconsistent claims, standing alone,
indicate fraudulent joinder.  However, none of these cases is
persuasive.  One is actually grounded on the principle that a
complaint must provide sufficient notice to enable a defendant to
mount a defense.  Specifically, In re Rezulin Prods. Liab.
Litig., 00 Civ. 2843(LAK), 2003 WL 43356, at *1 (S.D.N.Y. Jan 6,
2003), held that that some specific factual allegations were

---

v. Tyco Int'l Ltd., 422 F.Supp.2d 357, 381-82 (S.D.N.Y. 2006)
(collecting cases).  This makes sense because the question is
whether an action could be maintained against the allegedly
nominal party in state court.  Id.  However, there appears to be
no determinative difference between federal and New York
procedural rules with respect to this case so both will be cited.

necessary to provide adequate notice regarding claim that a
doctor knew or should have known of the danger posed by a drug
and failed to warn his patients when the complaint also alleged
that such information was withheld by the manufacturer.[4]  Whether
the allegations against Kinray and Southold are sufficiently
plead, is, however, a separate issue from whether they are
necessarily invalid due to the presentation of two allegedly
inconsistent theories.  Though there is some authority for
dismissing one of two claims because they rely on inconsistent
theories, see Baisden v. Bayer Corp., 275 F.Supp.2d 759, 763
(S.D.W.Va. 2003), no compelling analysis appears to support this
conclusion.  See id.  For these reasons, the view that
inconsistent theories automatically indicate fraudulent joinder
is rejected.

**b.    Cases Exempting Pharmacists from Strict Liability**

Second, the Sanolfi defendants argue that there is no
possibility that plaintiff can assert a valid claim against
Kinray and Southold because of a line of cases exempting
pharmacists from strict liability for damages caused by
pharmaceutical drugs.  Under New York law, strict liability for

---

[4] "[I]n light of plaintiff's myriad allegations that the
defendants withheld information concerning the risks of Rezulin
from physicians and others, an entirely conclusory allegation
that the physician failed to warn of risks of Rezulin is
insufficient to provide the defendant sufficient notice of the
claim against him."  In re Rezulin Prods. Liab. Litig., 2003 WL
43356, at *1 (footnote omitted).

pharmaceutical drugs generally does not apply to a pharmacist.

Bichler v. Willing, 58 A.D.2d 331, 334, 397 N.Y.S.2d 57, 59 (1st Dep't 1977), see also In re New York County Diet Drug Litigation, 262 A.D.2d 132, 133, 691 N.Y.S.2d 501, 502 (1st Dep't 1999).

Liability for a pharmacist is, however, possible when some level of fault is shown. See Negrin v. Alza Corp., 98 CIV. 4772 DAB, 1999 WL 144507, at *3-4 (S.D.N.Y. Mar. 17, 1999) (collecting New York cases regarding pharmacist's liability).

Even if this line of cases somehow showed that Southold pharmacy could not be liable, it would not show that there is no possibility of a recovery against Kinray.  These cases only explicitly mention pharmacists - they do not mention distributors.  See, e.g., Bichler, 58 A.D.2d at 334, 397 N.Y.S.2d 57 (referring to "retail druggists").  The Sanolfi defendants urge that the logic of the exception indicates that it should apply to distributors as well.  This point is debatable.  One federal court discussing another state's version of a similar principle suggested that it might apply only to pharmacists and not distributors because pharmacists provide a service.  Martin v. Merck & Co., Inc., No. S-05-750 LKK/PAN, 2005 WL 1984483, *3 (E.D. Cal. Aug. 15, 2005) (discussing California law).  Based on this distinction, the Merck court declined to find fraudulent joinder of a pharmaceutical distributor.  Id. at 3-4.  In our case, the uncertainty regarding the proper scope of application

10

for the pharmacy cases must be resolved in favor of the
plaintiffs. Accordingly, it will be assumed that the Kinray is
not eligible for protection under the pharmacist's exception.[5]

c.  **The Sufficiency of the Pleadings**

Third, the Sanolfi defendants contend that the allegations
against Kinray and Southold are insufficiently plead. Though the
parties contest many issues regarding the sufficiency of the
pleadings, to resolve the motion it is only necessary to discuss
the allegations against Kinray. The most relevant claims are
those relating products liability for defectively designing Ketek

_____

[5]In the alternative, even if Kinray were eligible for
protection under the pharmacist's exception, the allegations
against Kinray with respect to the failure to warn theory would
be sufficient to show that there is some possibility of a valid
claim notwithstanding the pharmacy cases on theories of both
failure to warn and negligence. Though there is a general
prohibition on strict liability for pharmacists, there are New
York cases finding liability on the part of pharmacists on
theories rooted in negligence. E.g., Hand v. Krakowski, 89
A.D.2d 650, 651, 453 N.Y.S.2d 121, 123 (2d Dep't 1982) (summary
judgment denied where a pharmacist may have dispensed drugs that
he should have known were contraindicated for a patient).
Failure to warn claims are analyzed in a similar manner to
negligence claims. See Martin v. Hacker, 83 N.Y.2d 1, 9 n.1, 628
N.E.2d 1308, 1311 n.1, 607 N.Y.S.2d 598, 601 n.1 (1993). These
claims are rooted in the "duty to warn the medical profession of
dangers inherent in its biological drugs which, in the exercise
of reasonable care, it knew or should have known to exist."
Baker v. St. Agnes Hospital, 70 A.D.2d 400, 405, 421 N.Y.S.2d 81,
85 (2d Dep't 1979) (emphasis added). Moreover, for reasons
discussed below, plaintiff's allegations are sufficient to show a
reasonable possibility of stating a claim for failure to warn.
Because of the similarity between failure to warn claims and
negligence claims, these same allegations indicate a reasonable
possibility that a claim has been stated against Kinray despite
the pharmacist's exception for both failure to warn and
negligence.

and for failing to warn regarding the drug's dangers.  The
Sanolfi defendants argue the plaintiff's claims against Kinray
for products liability are really directed at the Sanolfi
defendants - the "true targets" of these claims.  Def. Opp. Mot.
at 9.  They also assert that the pleadings contain too few
factual allegations specifically directed at Kinray.  It is
therefore necessary to determine (1) whether it is legally
possible to assert design defect and failure to warn claims
against a pharmaceutical distributor under New York law and (2)
given the relevant legal standards, whether plaintiff's pleadings
show a possible cause of action sufficient to overcome
allegations of fraudulent joinder.

   **1.   Which Causes of Action are Available**

   Both defective design and failure to warn claims are
potentially available against Kinray despite its status as a
distributor rather than a manufacturer.  With respect to most
goods, products liability law in New York provides for strict
liability for (1) manufacturing errors, (2) defective designs and
(3) failure to properly warn consumers of relevant dangers.[6]
Godoy v. Abamaster of Miami, Inc., 302 A.D.2d 57, 60, 754
N.Y.S.2d 301, 305 (2d Dep't 2003).  In normal products liability

_____

   [6]Failure to warn claims are analyzed in a manner more
similar to negligence actions than the other strict liability
theories.  See, e.g., Martin v. Hacker, 83 N.Y.3d 1, 9 n.1, 628
N.E.2d 1308, 1311 n.1, 607 N.Y.S.2d 598, 601 n.1 (1993).

cases:

> [A] manufacturer, wholesaler, distributor, or retailer who
> sells a product in a defective condition is liable for
> injury which results from the use of the product regardless
> of privity, foreseeability or the exercise of due care....
> Distributors and retailers may be held strictly liable to
> injured parties ... because liability rests not upon
> traditional considerations of fault and active negligence,
> but rather upon policy considerations which dictate that
> those in the best position to exert pressure for the
> improved safety of products bear the risk of loss resulting
> from the use of the products.

Id. (quotations and citations omitted).

Under New York law, prescription drugs are sometimes analyzed differently from other products, though the extent of the differences in the law are not entirely clear.[7]  In failure to warn cases related to pharmaceuticals, the defendant's "duty is to warn of all potential dangers in its prescription drugs that [the defendant] knew, or, in the exercise of reasonable care, should have known to exist."  Martin v. Hacker, 83 N.Y.2d 1, 8, 628 N.E.2d 1308, 1311, 607 N.Y.S.2d 598, 601 (1993).  This duty is sometimes phrased in terms of a duty owed by the manufacturer - without reference to duties on the part of a distributor.  See id.[8]

---

[7]One example of these special rules is the pharmacy line of cases discussed above.  See, e.g., Bichler, 58 A.D.2d at 334, 397 N.Y.S.2d 57.  The latest version of the Restatement also provides special rules for prescription drugs.  See, e.g., Restatement (Third) of Torts: Prod. Liab. § 6 (1998).

[8] Though one case noted that the responsibility to adequately warn "falls most heavily on the manufacturer[,]" this

However, there is a reasonable possibility that a failure to warn claim could be asserted against a pharmaceutical distributor. Such a claim could be asserted against a distributor under standard products liability principles. Godoy, 302 A.D.2d at 60, 754 N.Y.S.2d 301; see also Reed v. Niagara Machine & Tool Works, Inc., 166 A.D.2d 567, 568, 560 N.Y.S.2d 851, 852 (2d Dep't 1990). There is no clear indication that there is an exception for pharmaceutical drug cases. Indeed, there is a suggestion in New York case law that failure to warn liability can apply against a pharmaceutical distributor. Martin v. Hacker, 185 A.D.2d 553, 554, 586 N.Y.S.2d 407, 409 (3d Dep't 1992) ("[failure to warn] liability can also extend to drug distributors in some cases.") aff'd on other grounds 83 N.Y.2d 1, 628 N.E.2d 1308, 607 N.Y.S.2d 598.[9] Moreover, at least one other state may allow failure to warn claims against drug distributors. Merck, 2005 WL 1984483, at *3 (rejecting a claim that a pharmaceutical drug distributor had been fraudulently joined under California law). As uncertainties are resolved in favor of

_____

leaves open the possibility of liability for a distributor. Baker v. St. Agnes Hospital, 70 A.D.2d 400, 405, 421 N.Y.S.2d 81, 85 (2d Dep't 1979) (emphasis added).

[9]The precedential effect of the Third Department's language on this point in Martin is not entirely clear as the distributor had waived its argument that it could not be held liable for failure to warn by not raising it in its appellate papers. Martin, 185 A.D.2d 553, 554 n.1, 586 N.Y.S.2d 407. However, even if this language is dicta, it still indicates that there is a possibility that a New York court would recognize such a claim.

the plaintiff, <u>Pampillonia</u>, 138 F.3d at 461, it will be assumed that such a claim is possible for purposes of the motion to remand.

Regarding the issue of defective design liability, there are some indications that the scope for such liability in pharmaceutical drug cases in New York is narrow.  In <u>Martin</u>, the Court of Appeals wrote:

> [A]lthough a prescription drug is by its nature an inherently unsafe product and would in the usual case impute strict liability to its manufacturer, a defense is provided against such liability when the drug is properly prepared, and accompanied by proper directions and warning. Therefore, even though its side effects may cause injury, a prescribed drug, accompanied by adequate warnings, is not defective, nor is it unreasonably dangerous.

<u>Martin v. Hacker</u>, 83 N.Y.2d 1, 8, 628 N.E.2d 1308, 1311, 607 N.Y.S.2d 598, 601 (1993) (referencing Restatement (Second) of Torts § 402 A, cmt. k, other citations and quotations omitted). The Restatement (Second) of Torts, to which the <u>Martin</u> court referred, provides that a "seller of [drugs] ... with the qualification that they are properly prepared and marketed, and proper warning is given... is not to be held to strict liability for unfortunate consequences attending their use."  Restatement (Second) of Torts § 402A, cmt. k (1965) ("Comment k").

<u>Martin</u> and Comment k, however, do not bar design defect liability on the facts asserted here.  <u>Martin</u> says that, where a warning is adequate, a product is not unreasonably dangerous. Unreasonable dangerousness is, of course, the standard for design

defect liability.  See Voss v. Black & Decker Mfg. Co., 59 N.Y.2d 102, 106, 450 N.E.2d 204, 208, 463 N.Y.S.2d 398, 402 (1983). Thus, this statement from Martin suggests that, where there is a proper warning, design defect liability is barred.  Martin says nothing about what happens if there is no proper warning.  Absent that safe harbor, the general products liability rules that (1) provide for design defect liability and (2) indicate that design defect claims can be asserted against distributors might be applicable.  Cf. Godoy, 302 A.D.2d at 60, 754 N.Y.S.2d 301.

Similarly, Comment k provides a defense to design defect liability when there is an adequate warning.  "If, on the other hand, the manufacturer does not adequately warn, it may be strictly liable for a design defect...."  2 Frumer and Friedman, Products Liability § 12.01[4] (2007) (discussing Comment k). Though Comment k may be focused on manufacturers, see id., there is no New York case law indicating how it would apply to a distributor.  Resolving doubts in favor of the plaintiff, it is therefore possible that liability could be found on the part of a distributor where there was a failure to warn.  In our case, plaintiff alleges a failure to warn on the part of the Sanolfi defendants.  That alleged failure to warn takes the case out of the safe harbor described by Martin and Comment k.

Moreover, even if the safe harbors described by Martin and Comment k by their literal terms excluded design defect liability

here, design defect liability would still be at least "possible."
For one, the language from <u>Martin</u> is dicta. <u>Martin</u> considered a
case involving a failure to warn claim - no design defect claim
was at issue. <u>See</u> <u>Martin</u>, 83 N.Y.2d at 6; <u>see also</u> <u>Militrano ex</u>
<u>rel. Militrano v. Lederle Laboratories</u>, 3 Misc.3d 523, 533, 769
N.Y.S.2d 839, 847 (N.Y.Sup. 2003). Accordingly, a subsequent New
York court might not decide to follow <u>Martin</u>. Additionally, a
new version of the Restatement has been issued since <u>Martin</u> was
decided. The Restatement (Third) of Torts provides that
manufacturers of pharmaceuticals are liable for design defect
when "reasonable health-care providers, knowing of [the]
foreseeable risks and therapeutic benefits, would not prescribe
the drug or medical device for any class of patients."
Restatement (Third) of Torts: Prod. Liab. § 6(c) (1998). To be
sure, the Restatement (Third) does not provide for liability for
intermediate distributors. However, New York courts have not
made a clear choice regarding the extent to which they will adopt
the Restatement (Third) as it applies to this case.[10] It is
therefore conceivable that New York courts would agree with the
Restatement (Third) that design defect liability should be
available for prescription drugs but leave in place the

_____

[10]<u>See</u> N.Y. Pattern Jury Instr. Civil 2:120 Cmt.II.A.1 (2008)
(discussing Restatement (Third) of Torts: Prod. Liab. § 6(c) and
noting that "New York courts have not yet addressed the
applicability of this standard.").

17

background principle of New York law which provides design defect liability against a distributor. Therefore, it will be assumed that a design defect claim could be asserted against Kinray in this case.

## 2. Adequacy of the Pleadings

Having determined that design defect and failure to warn claims are legally available against Kinray, it remains to determine whether the plaintiff's allegations are sufficient to establish that Kinray has not been fraudulently joined. The standard on a motion to dismiss is normally generous. See Iqbal v. Hasty, 490 F.3d 143, 157-158 (2d Cir. 2007) (noting that, under federal law, specific factual allegations are generally only necessary when needed to make a claim plausible); Leon v. Martinez, 84 N.Y.2d 83, 87-88, 638 N.E.2d 511, 513, 614 N.Y.S.2d 972, 974 (1994) (discussing the liberal New York pleading standard).[11] As noted above, in resolving a claim of fraudulent joinder, even greater leeway is given to a plaintiff's claims than on a motion to dismiss. Intershoe, 97 F.Supp.2d at 474.

Plaintiff's design defect claims are sufficient to show that Kinray has not been fraudulently joined. For a design defect

---

[11]The Leon court wrote that, on a motion to dismiss, "[w]e accept the facts as alleged in the complaint as true, accord plaintiffs the benefit of every possible favorable inference, and determine only whether the facts as alleged fit within any cognizable legal theory." Leon, 84 N.Y.2d at 87-88, 614 N.Y.S.2d 972.

claim, "[l]iability attaches when the product, as designed, presents an unreasonable risk of harm to the user." Voss v. Black & Decker Mfg. Co., 59 N.Y.2d 102, 106, 450 N.E.2d 204, 208, 463 N.Y.S.2d 398, 402 (1983).[12] Plaintiff's complaint plainly alleges that Ketek was "unreasonably dangerous...." Compl. ¶ 116. Moreover, the section of plaintiff's complaint discussing plaintiff's general factual allegations sheds light on the nature of the risks allegedly posed by Ketek. It refers to chemical imbalances allegedly caused by Ketek, Compl. ¶ 91, adverse patient outcomes allegedly caused by Ketek, Compl. ¶ 92, and references an FDA review report discussing risk/benefit concerns with Ketek. Compl. ¶ 93-94. Taken together, these allegations give adequate notice of the plaintiff's accusations. The Sanolfi defendants note the lack of allegations specifically directed at Kinray. Kinray, however, may be liable without any fault on its part under general product liability principles. Godoy, 302 A.D.2d at 60, 754 N.Y.S.2d 301. Accordingly, a design defect claim has been sufficiently plead against Kinray.

_____

[12]The Restatement (Third) of Torts adopted a different standard for drug cases, indicating that liability should only be found where "reasonable health-care providers, knowing of [the] foreseeable risks and therapeutic benefits, would not prescribe the drug or medical device for any class of patients." Restatement (Third) of Torts: Prod. Liab. § 6(c) (1998)(emphasis added). However, given the uncertainty regarding the extent to which New York will adopt the Restatement (Third) formulation and the deferential standard at issue here, the Restatement's language does not indicate fraudulent joinder.

The failure to warn claim is a closer issue but is sufficiently well plead to avoid removal. Moreover, the same allegations also establish the possibility of a claim for negligence. For failure to warn claims, there is a duty "to warn of all potential dangers in its prescription drugs that [the defendant] knew, or, in the exercise of reasonable care, should have known to exist." Martin v. Hacker, 83 N.Y.2d 1, 8, 628 N.E.2d 1308, 1311, 607 N.Y.S.2d 598, 601 (1993). The complaint makes several specific allegations regarding signs of danger for Ketek. Among these were at least 160 adverse events, of which 35 were related to liver problems. Compl. ¶ 140. Also, European Union regulators had required warnings regarding liver problems. Compl. ¶ 141. To be sure, it is not obvious that a distributor should reasonably have been aware of these problems and taken action. However, it is not entirely implausible either.[13] Given the liberal standards at issue here, these allegations are sufficient to show the possibility of a claim for failure to

_____

[13]These specific allegations regarding danger signs distinguish this case from the allegations found insufficient in Rezulin. Rezulin, 2003 WL 43356, at *1. That case concerned an allegation that a doctor had been fraudulently joined in a pharmaceutical products liability case. Id. The claim against the doctor was for failure to warn, but there was also an allegation that the drug-maker had failed to inform doctors of the relevant risks. Id. The court in Rezulin found that the doctor had been fraudulently joined because the complaint was insufficient to provide sufficient notice of the claims against the doctor. Id. The allegations in that case, however, were entirely conclusory, while here there are specific factual claims regarding the indications of danger that were present.

20

warn.  Moreover, under New York law, failure to warn claims are analogous to negligence claims in pharmaceutical cases.  See Martin v. Hacker, 83 N.Y.2d 1, 8, 628 N.E.2d 1308, 1311, 607 N.Y.S.2d 598, 601 (1993).  Accordingly, these same allegations suffice to show the possibility of a claim for negligence.

Accordingly, both the design defect and failure to warn claims are sufficiently pled against Kinray and Kinray has not been fraudulently joined.  There is therefore no diversity jurisdiction as both defendant Kinray and the decedent are citizens of New York.  For this reason, removal is appropriate.


**(2)**

**Removal Procedures**

The Sanolfi defendants' attempt to remove this action is also defeated because they have failed to secure consent from all the necessary defendants.  Though the removal statute, 28 U.S.C. § 1441(a) does not explicitly require it, "the statute has been consistently interpreted to require that all named defendants over whom the state court acquired jurisdiction must join in the removal petition for removal to be proper."  Varela v. Flintlock Const., Inc., 148 F.Supp.2d 297, 300 (S.D.N.Y. 2001) (quotation and brackets omitted).  Most significantly, plaintiff argues that the Sanolfi defendants have not secured consent from all the necessary parties because they did not obtain the consent of Dr.

Kirkman-Campbell.

Defendants need not join the removal petition when "(1) the non-joining defendants have not been served with service of process at the time the removal petition is filed; (2) the non-joining defendants are merely nominal or formal parties; and (3) the removed claim is a separate and independent claim as defined by 28 U.S.C. § 1441(c)." <u>Varela</u>, 148 F.Supp.2d at 300 (quotation omitted).[14]

Under this standard, the Sanolfi defendants were required to obtain Dr. Kirkman-Campbell's consent to removal and their failure to do so is an independent reason to grant the motion to remand. The Sanolfi defendants allege in their papers that Dr. Kirkman-Campbell is a sham defendant. However, nowhere do they even attempt to demonstrate that this is true. They merely make a conclusory allegation to this effect in a footnote. Def. Opp. Mot. at 12 n.6. This does not suffice. If it did, the unanimity requirement would itself be a sham. <u>Cf.</u> <u>In re Rezulin</u> <u>Prods. Liab. Litig.</u>, 133 F.Supp.2d 272, 295 (S.D.N.Y. 2001) (not requiring consent from a nominal party - but only after a showing that the party was nominal). Moreover, the allegations in the complaint suggest that Kirkman-Campbell is anything but a nominal

---

[14]The Sanolfi defendants admit that they have not obtained the consent of four individual doctors who have not been served with process at the time the removal petition was filed. It was unnecessary to obtain their consent because they had not yet been served and plaintiffs do not appear to dispute this point.

party.  They indicate that Kirkman-Campbell was involved in conducting a research study that was relevant in obtaining regulatory approval for Ketek and allege that she committed criminal misconduct in the course of the regulatory approval process that lead to her incarceration.  Compl. ¶ 33. Accordingly, her consent to removal was necessary and the failure to secure it constitutes grounds for remand.

## Conclusion

For the reasons stated above, the motion to remand to state court is granted.  There is a possibility that plaintiff can assert a claim against Kinray, indicating that Kinray has not been fraudulently joined and that complete diversity is not present.  There is therefore no federal jurisdiction over this claim.  Additionally, the Sanolfi defendants failed to secure the consent to removal of all required defendants; this constitutes an independent ground for remand.  The Clerk of Court is directed to close the case.


Dated: Brooklyn, New York
       March 30, 2009


                              SO ORDERED:


                              _____/s/_____
                              David G. Trager
                              United States District Judge